IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

TENISHA PECK,                          )
For AB, a minor,                       )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          No.  12-1240-T
                                       )
COMMISSIONER OF                        )
SOCIAL SECURITY,                       )
                                       )
                    Defendant.         )

---

ORDER AFFIRMING DECISION OF COMMISSIONER

---

Plaintiff, through her mother, has filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for child's supplemental security income benefits ("SSI") under the Social Security Act ("Act").  The application and the request for reconsideration were denied.  Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on February 15, 2011.

On March 28, 2011, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The appeals council affirmed the ALJ's decision.  This decision became the Commissioner's final decision.  Plaintiff has filed this action, requesting reversal of the Commissioner's decision.  For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); Drummond v. Commissioner, 126 F.3d 837, 840 (6th Cir. 1997), and whether the correct legal standards were applied. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). When the record contains substantial evidence to support the Commissioner's decision, the decision must be affirmed. Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Plaintiff was born on November 10, 1996. She alleges a disability onset date of February 1, 2009, due to anxiety and depression. R. 19, 118. She attended regular classes at school.[1] Due to Plaintiff's young age, she has no work history.

---

[1] In the lower grades, Plaintiff earned mostly Cs, with a few Bs. R. 201, 398. She received proficient scores in standardized testing for math, science, social studies, and reading and language arts in third and fourth grades. R. 198-99, 399. Although her grades declined in fifth grade, R. 200, she received proficient scores in math, social studies, and reading and language arts. R. 193-96, 397. In sixth grade, she earned mostly Cs and one B, R. 396, and received proficient scores in reading and language arts, math, science, and social studies. R. 397. In the seventh grade, she was disciplined several times between October 2009 and January 2010. R. 150, 152-53. In the eighth grade, she earned two Cs and two Ds for the first semester, R. 388, and was disciplined several times. R. 389-91.

The Welfare Reform Act amended certain provisions of the Social Security Act relating to SSI applications by children as follows:

> An individual under the age of 18 shall be considered disabled for purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than 12 months.

Welfare Reform Act, Title II, Subtitle B, § 211(a)(4) (1996), 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration ("SSA") promulgated final rules implementing this provision. The rules establish a three step sequential evaluation for determining childhood disability such that the SSA considers (1) whether the child is working; (2) whether the child has a medically determinable severe impairment which is expected to result in death, has lasted or is expected to last for a continuous period of not less than twelve months and, if so, (3) whether the impairment or combination of impairments meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2000) (the "Listings"). 20 C.F.R. § 416.924 (2000). A child will be found disabled if she has an impairment or combination of impairments which meet, equal, or functionally equal any impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1, Listing of Impairments.

Methods that may be used to determine whether an impairment is functionally equivalent to a listing include consideration of whether the child's impairment effects "broad areas of development or functioning" set forth in the regulations. 20 C.F.R. § 416.926a(b)(1)-(b)(4) (2000). The SSA will find an impairment functionally equivalent to a

listing if the child has an extreme limitation in one area of functioning or a marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(b)(2). For children over three years of age, the areas of development or functioning (domains) that may be addressed in considering functional equivalence are: acquiring and using information; attending and completing tasks; interacting and relating with others; moving and manipulating objects; caring for yourself; and, health and well-being. 20 C.F.R. § 416.926a. Determination of functional equivalence to a listing entails determination as to whether a child meets the criteria for "marked" limitation in any two of the six domains, without comparison to any specific childhood listing. Id.

When standardized tests are used as a measure of functional abilities, an "extreme limitation" is a valid score that is three standard deviations or more below the norm for the test 20 C.F.R. § 416.926a, while a "marked limitation" is a valid score that is two standard deviations or more below the norm for the test. 20 C.F.R. § 416.926a(c)(3). A marked limitation is "more than moderate" and "less than extreme." Marked limitations may arise when several activities or functions are limited or even when only one is limited, as long as the degree of limitation interferes seriously with the child's functioning. Id.

The burden of proof at the listing level of the sequential evaluation is on the plaintiff. In order for a plaintiff to show that her impairment matches a listing, the impairment must meet all specified medical criteria. See Zebley v. Sullivan, 493 U.S. 521, 530 (1990). In the present case, the ALJ determined that Plaintiff has a severe impairment of history of conduct disorder but does not have an impairment or combination of impairments that meet or

medically equal one of the listed impairments and Plaintiff does not functionally equal the listings. The ALJ also found that Plaintiff's impairments have not caused an "extreme" limitation in any domain of functioning or a "marked" limitation in any two domains of functioning. Therefore, Plaintiff was not disabled as defined in the Social Security Act since March 24, 2009, the date of the application. In reaching his decision, the ALJ considered all of Plaintiff's medically determinably impairments, including any that were not found to be severe in all of the affected domains.

Subjective complaints alone cannot establish disability. The record must include medical signs and findings showing the existence of a medical impairment that, when considered with all the other evidence, would lead to a conclusion the claimant is disabled. See 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(I); 20 C.F.R. § 416.929(a); Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001).

Here, the ALJ properly determined that the mother's testimony did not establish disability because it was not consistent with the following evidence: (1) Plaintiff did not require special education classes and was never retained at any grade level. R. 28, 200, 278, 396. (2) Plaintiff's verbal, performance, and full-scale IQ scores were 118, 105, and 113. R. 282. (3) Opinions from providers at Pathways Behavioral Health Services stated that Plaintiff's strengths included good physical health, good social skills, good verbal skills, and independence in her activities of daily living skills. R. 218, 268. (4) The mother reported that Abilify was working well in October 2010, R. 357, and that Plaintiff had no recent problems at school in November 2010. R. 368. (5) Dr. Paul Brown, a psychologist, observed that

Plaintiff was mostly polite and well-mannered, did not exhibit any strange or unusual behavior, had no apparent difficulty comprehending, understanding, or responding to questions and taking part in the interview, and was limited only mildly in understanding and remembering instructions and moderately in sustaining concentration and persistence, interacting with others, and adapting to changes and requirements. R. 23, 240. (6) Dr. Ronald Lynn, a neurologist, observed that Plaintiff had normal speech, followed instructions, had no alteration of consciousness, and was only "perhaps a bit" distractable. R. 275. (7) Dr. Robert Kennon opined that Plaintiff was dissimulating and assigned her a GAF score of 90. R. 280.[2] The ALJ also considered that Plaintiff's mother was not a disinterested third party in finding that her testimony was not credible.

Plaintiff argues that the ALJ should have considered follow-up testing from Memphis Neurology. This evidence includes intelligence testing and a Connors' Assessment of ADHD. R. 282-99. The ALJ cited this exhibit (11F) when considering Plaintiff's varying diagnoses. The ALJ explained that he declined to accept the diagnoses Plaintiff received after this testing because Plaintiff had received varying diagnoses, R. 249, 276, 280, 315, and treatment notes showed that she was making progress. Plaintiff has not explained how this testing undermines the ALJ's decision. R. 284-99.

---

[2]  The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. See *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32, 34 (Text Revision 4th ed.2000). GAF scores are situated along the following "hypothetical continuum of mental health [and] illness": 81–90: "Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members)."

Plaintiff complains of the weighing of the medical evidence. The ALJ gave great weight to the opinions of Dr. Larry Welch, a psychologist, and Dr. Brad Williams, a psychiatrist that Plaintiff's impairments were not disabling. He gave less weight to the opinions of Dr. David Pickering, a psychologist, and Rodger Chinery, a licensed professional counselor ("LPC"), that Plaintiff's impairments caused marked limitations in several domains. The ALJ rejected the diagnoses of Dr. Ronald Lynn, neurologist.

The weight afforded a physician's opinion on the issue(s) of the nature and severity of a claimant's impairments depends upon the examining relationship or treating relationship the physician may have had with the claimant, the evidence the physician presents to support her opinion, how consistent the physician's opinion is with the record as a whole, the physician's specialty, and other factors. See 20 C.F.R. § 416.927(d). Generally, a treating physician's opinion is entitled to more weight, and an ALJ must give good reasons for rejecting a treating physician's opinion. See 20 C.F.R. § 416.927(d)(2); Wilson v. Commissioner, 378 F.3d 541, 544 (6th Cir. 2004). However, the Commissioner "is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993).

Dr. Welch reviewed the evidence and determined that Plaintiff did not have an impairment that met, medically equaled, or functionally equaled a listed impairment. R. 252-57. Dr. Welch opined that Plaintiff's impairments caused less than marked limitations in the domain of acquiring and using information, attending and completing tasks, interacting

and relating with others, moving about and manipulating objects, and caring for yourself, and no limitations in the domain of health and physical wellbeing. R. 254-55. As noted by Dr. Welch, Plaintiff attended school in regular classes and did not have special education services. R. 257. Dr. Welch concluded that Plaintiff's mental impairments caused only moderate limitations at most. R. 257.[3]

Dr. Williams also reviewed the evidence and determined that Plaintiff did not have an impairment that met, medically equaled, or functionally equaled a listed impairment. R. 300-05. Dr. Williams opined that Plaintiff's impairments caused less than marked limitations in the domain of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for yourself, and no limitations in the domain of health and physical wellbeing. R. 302-05. Dr. Williams pointed out that Dr. Kennon's consultative examination revealed evidence of malingering and opined that Plaintiff apparently had been coached to present herself as less capable. R. 300.[4]

Because Dr. Welch and Dr. Williams explained and supported their opinions, the ALJ could properly give them great weight. See 20 C.F.R. § 416.927(c)(3) (permitting ALJ to weigh opinion based on how much its source explains or supports the opinion).

---

[3] Dr. Welch also relied on the opinion of Dr. Paul Brown that Plaintiff's limitations were moderate or mild and his GAF score suggesting only moderate symptoms or difficulties. R. 249, 257.

[4] Dr. Kennon examined Plaintiff in November 2009. R. 277. Dr. Kennon stated that Plaintiff's presentation showed "marked evidence of dissimulation." R. 278. Dr. Kennon considered the mother's reports that Plaintiff urinated and defecated on herself "on a daily basis" and was "concerned whether these issues are actually occurring." R. 278. He concluded that Plaintiff's presentation was "[q]uite obviously . . . suggestive of dissimulation." R. 280.

Substantial evidence supports the ALJ's decision to give less weight to the opinions of Dr. Pickering and Mr. Chinery concerning whether Plaintiff's impairments caused marked limitations in acquiring and using information.. Dr. Pickering, a psychologist, examined Plaintiff and opined that she had marked impairments in acquiring and using information, attending and completing tasks, and interacting and relating with others, moderate limitations in caring for herself, and no or slight limitations in the remaining domains. R. 404. Mr. Chinery opined that Plaintiff had "none to slight" limitations in acquiring and using information and "marked" limitations only in attending and completing tasks and interacting and relating with others. R. 380. The ALJ declined to accept these opinions because they were unsupported by the medical evidence and inconsistent with the record. <u>See</u> 20 C.F.R. § 416.927(c)(4).[5] Furthermore, Plaintiff did not require special education classes and had never been retained at any grade level. R. 28, 278.

Substantial evidence also supports the ALJ's decision that Plaintiff's impairments caused less than marked limitations in interacting and relating to others. The mother reported that Plaintiff had no problems with recreational activities and played outside on the trampoline, hung out with friends, and talked on the phone. R. 211. In September 2009, Plaintiff reported she attended a church picnic and spoke with "a bunch of people" and that her medications were fine. R. 325.

_____

[5] The ALJ also considered that Mr. Chinery is not an acceptable medical source. Acceptable medical sources are physicians and (when evaluating impairments related to their specialty) psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5). <u>See</u> <u>Pendleton v. Astrue</u>, 2012 WL 1571296, at *6 (E.D. Ky. May 3, 2012) (ALJ properly rejected nurse's opinion that Plaintiff was disabled and noting a nurse "is not an acceptable medical source").

Additionally, Stephanie Williams and Shaun Pilkington of Pathways determined that Plaintiff had good physical health, good social skills, good verbal skills, and was independent in her activities of daily living skills. R. 218, 268. And, Dr. Brown observed that Plaintiff was mostly polite and well-mannered and did not exhibit any strange or unusual behavior. R. 23, 240. Her personal appearance was appropriate, neat, and well groomed, presentation was cooperative and appropriate, affect and mood were appropriate, voice level and tone were appropriate, and speech articulation was appropriate. R. 24, 244. Dr. Brown opined that she was limited only moderately in interacting with others. R. 23, 240.

Substantial evidence also supports the ALJ's decision that Plaintiff's impairments caused less than marked limitations in attending and completing tasks. Dr. Lynn observed that Plaintiff's speech seemed normal and that she followed instructions. R. 275. Plaintiff was "a bit" distractable, but Dr. Lynn did not note any alteration of consciousness. R. 275. Plaintiff's presentation was alert, concentration was focused and adequate, attention and focus appeared adequate, motivation appeared adequate, reasoning ability appeared intact, fund of general information appeared slightly below average, and judgment and insight appeared good. R. 24, 244. He also opined that she was limited only moderately in sustaining concentration and persistence. R. 23, 240.

Dr. Lynn, a neurologist, diagnosed Plaintiff with possible attention-deficit hyperactivity disorder ("ADHD"), impulse control disorder, behavior problems, probable depression, and headaches. R. 276. The ALJ declined to accept these diagnoses because Plaintiff had received varying diagnoses, R. 249, 276, 280, 315, and treatment notes showed

that Plaintiff's mental status was generally intact. R. 23. <u>See</u> 20 C.F.R. § 416.927(c)(4) (permitting ALJ to weigh opinion based on its consistency with the other evidence).

The ALJ also found that Plaintiff's treatment notes did not support Dr. Lynn's diagnoses. Ms. Williams repeatedly observed that Plaintiff's insight was fair, intellect was average, and thought process was organized. R. 216. She also described Plaintiff's thought content as appropriate in March, February, June, and August 2009. R. 264. Similarly, Mr. Pilkington observed that Plaintiff was attentive, talkative, and respectful in July 2009, talkative and respectful despite not feeling well in August 2009, R. 265-66, and talkative and respectful in October, R. 331-32, and November 2009. R. 333, 338. This evidence showing that Plaintiff was "making progress and had a responsive participation level" supports the ALJ's decision not to accept the diagnoses suggested by Dr. Lynn.

Because substantial evidence supports the ALJ's decision that Plaintiff is not entitled to benefits, the decision of the Commissioner is AFFIRMED, and the clerk is DIRECTED to enter judgment.

IT IS SO ORDERED.


 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE